NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0029n.06

Nos. 09-2418 & 09-2588

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jan 10, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CANDICE ROSSI CHEOLAS AND STEVE CHEOLAS, | ) | |
| | ) | |
| | ) | |
| Plaintiffs-Appellants, (09-2418) | ) | |
| Plaintiffs-Appellees, (09-2588) | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CITY OF HARPER WOODS, et al., | ) | |
| | ) | O P I N I O N |
| Defendants-Appellees, (09-2418) | ) | |
| Defendants-Appellants. (09-2588) | ) | |
| | ) | |

Before:     KEITH, SUTTON, and McKEAGUE, Circuit Judges.

**PER CURIAM**. This case arises from an incident in which Plaintiffs-Appellants Candice and Steve Cheolas were criminally charged when the police discovered that multiple teenagers had consumed alcoholic beverages at their residence. After the criminal charges were dismissed on a directed verdict motion, the Cheolases initiated this civil rights action for malicious prosecution against Defendants-Appellees City of Harper Woods ("the City"). The district court granted the defendants' motion for summary judgment after finding that probable cause existed as a matter of law. The district court also denied the defendants' motion for attorney fees. For the reasons that follow, we AFFIRM.

I.

A.

Nos. 09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 2

Mr. Steve Cheolas and Mrs. Candice Cheolas decided to host a surprise party in the basement of their Harper Woods residence on April 24, 2004, to celebrate the fifteenth birthday of their daughter, Alexandria. The invitees to the party were all high school freshmen. Appellants allege that, in preparation for the party, Mrs. Cheolas instructed the invitees not to bring food or water in the party because she would provide food and beverages.

Around thirty to thirty-five high school students attended Alexandria's surprise party, which began around 8:30 pm when Alexandria arrived. At some point in the party some of the teenagers started to consume alcohol. Around 10:00 pm, the mother of one of the attendees, Phelicia VanOverbeke, called to speak with her daughter. Phelicia did not come to the phone when called, however, and Mrs. Cheolas soon found her in an intoxicated state.

Meanwhile, Phelicia's parents drove to the Cheolas residence. After they discovered that Phelicia was intoxicated, Mr. VanOverbeke placed a 911 call informing the dispatcher that someone had given his daughter drugs at a party. After the police arrived they requested to enter the house. Sergeant Gerald Firlik instructed Mrs. Cheolas, who was standing in front of the entrance to the residence, to "step aside." Mrs. Cheolas responded, "No." Once again, the officer asked Mrs. Cheolas to step aside. Mrs. Cheolas then conferred with her husband about whether she should let the officers inside. The officers proceeded into the residence before Mrs. Cheolas communicated with them again.

The police found Phelicia pale, semi-conscious, and groggy. Mr. and Mrs. VanOverbeke transported Phelicia to the hospital where she registered a blood-alcohol level of .18%. The police officers administered Breathalyzer tests to thirty-one teenagers that were in the Cheolases' basement.

Nos. 09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 3

Twelve of the attendees did not consume any alcohol. Nineteen of the attendees tested positive for alcohol. Of the nineteen who tested positive, eight had blood-alcohol levels of .04% or less, seven had levels between .04% and .08%, and four had levels between .092% and .14%. The officers also discovered several bottles of liquor in the basement.

During the subsequent investigation surrounding the events at the Cheolases' party, Detectives William Snider and David Sheill interviewed thirty-three of the ninth graders who attended the party as well as Mary Jo Pickelhaupt, a parent present at the party assisting Mrs. Cheolas. The interviews did not reveal that Mrs. and Mrs. Cheolas supplied any of the alcohol consumed by the teenagers. At his deposition, Det. Snider testified that it was his belief that the Cheolases knew or should have known that the teenage attendees were consuming alcoholic beverages on the premises. Nineteen of the teenagers who consumed alcohol were referred to the Youth Assistance Program.

On May 18, 2004, Mr. and Mrs. Cheolas were jointly charged with two misdemeanor offenses: (1) knowingly allowing minors to consume alcohol in their home and (2) contributing to the delinquency of a minor. Only Mrs. Cheolas was charged with the third offense of obstructing a police officer. The City dismissed the charges against Mr. Cheolas on August 26, 2004.

B.

On May 19, 2005, the date that a bench trial was set to begin in Michigan state district court on the three charges against Mrs. Cheolas, the trial court granted Mrs. Cheolas's motion to dismiss all charges. The state circuit court reversed the dismissal of the misdemeanor charges against Mrs. Cheolas on September 16, 2005.

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 4

In January 2006, on remand, the state district court conducted a two-day bench trial on the criminal charges against Mrs. Cheolas.  After the City concluded their case-in-chief, the trial court granted Mrs. Cheolas's motion for a directed verdict upon finding that the City failed to prove their case beyond a reasonable doubt.

Mr. and Mrs. Cheolas filed this civil rights suit in federal district court on April 21, 2006. Pertinent to this appeal, the Cheolases asserted a claim under 42 U.S.C. § 1983 for wrongful prosecution against the City of Harper Woods, the City Manager, the City of Harper Woods Police Department, four police officers and three paramedics who responded to the dispatch on April 24, 2004, and the investigating police officers.  On September 29, 2009, the district court granted summary judgment in favor of the defendants after concluding that the plaintiffs' wrongful prosecution claim failed because, as a matter of law, probable cause existed for each offense that Mrs. Cheolas was charged with.  The district court also denied the defendants' motion for attorney fees in an order entered on December 1, 2009.

This appeal followed.

## II.

We review a district court grant of summary judgment *de novo*.  *Big Yank v. Liberty Mutual Fire Ins. Co.*, 125 F.3d 308, 312 (6th Cir. 1997).  Summary judgment is required when the movant shows that "there is no genuine dispute as to any material fact" and he or she is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The substantive law will determine which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v.*

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 5

*Catrett*, 477 U.S. 317, 323 (1986).  In deciding whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Id.* at 252.  Rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.*

The Cheolases claim that the district court erred in finding that probable cause existed as a matter of law, thereby foreclosing their cause of action for malicious prosecution, which requires a showing of the absence of probable cause. We disagree.

A § 1983 claim for malicious prosecution arises from the deprivation of rights secured by the Fourth Amendment. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).  In *Fox*, we observed that although the precise contours of a § 1983 claim for malicious prosecution remained uncertain, it surely fails when either (1) "there was probable cause to prosecute" or (2) "when the defendant did not make, influence, or participate in the decision to prosecute." *Id.* We have since given more definition to the elements of a malicious prosecution claim under § 1983.  A plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010).  Accordingly, one consistent way in which a malicious prosecution claim fails is if the prosecuting parties, or those influencing the decision to prosecute, had probable cause to pursue the criminal prosecution.

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 6

Probable cause is a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)).  Probable cause is established if there is an objectively reasonable basis for the belief that a crime has been committed. *Id.* at 563. "[T]he establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 392-93 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)) (internal quotation marks omitted).  Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal citations omitted).

Although there is some overlap between Steve and Candice Cheolas's conduct in determining the existence of probable cause, we have limited the following probable cause inquiries to focus exclusively on Candice Cheolas's conduct.  While it is unclear how long Steve Cheolas was at the residence during the birthday party, there is no dispute that Mrs. Cheolas was present at home throughout the entire duration of the birthday party.  Regardless of whether Mr. Cheolas can show a lack of probable cause for prosecution as it relates to his conduct, his claim for malicious prosecution will fail because he is unable to show that he suffered a loss of liberty as a result of a legal proceeding and points to no case clearly establishing that such a de minimus injury rises to the level of a constitutional violation, as he would need to do to overcome the defendants' qualified immunity.  Indeed, there was no legal proceeding against him since his charges were voluntarily dismissed. We therefore focus on the existence of probable cause as it relates to Candice Cheolas.

***Knowingly Allowing Children to Consume Alcohol***

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 7

Mrs. Cheolas was charged with knowingly allowing children to consume alcohol in violation of Mich. Comp. Laws § 750.141a(2)(a).  This statute prohibits a homeowner or someone having control over property from "[k]nowingly allow[ing] a minor to consume or possess an alcoholic beverage at a social gathering on or within that . . . residence . . ."  Mich. Comp. Laws 750.141a(2)(a).  The statute defines "allow" as "to give  permission for, or approval of, possession or consumption of an alcoholic beverage" through  written statements, oral statements, or any form of conduct, including failing to take corrective action, that would cause a reasonable person to believe that permission or approval has been given.  Mich. Comp. Laws 750.141a(1)(b)(i)-(iii).  Notably, part of the statute creates a rebuttable presumption that the defendant allowed the consumption of alcoholic beverages if it can be shown that the defendant (1) had control of the premises, (2) knew that the minor was consuming or in possession of an alcoholic beverage at a social gathering on or within the premises, and (3) the defendant failed to take corrective action.  Mich. Comp. Laws § 750.141a(6)(a)-(c).  The probable cause inquiry for a violation of this statute focuses on whether an objectively reasonable basis exists to believe  that Mrs. Cheolas "knowingly allowed" a minor to consume alcoholic beverages.

The Cheolases argue that there is no evidence suggesting that they "knowingly allowed" the teenagers to consume alcohol.  They claim that they were not "knowledgeable" about the alcohol consumption at the party and took proactive steps to prevent alcohol from being brought to the party—namely by instructing the invitees not to bring any food or drink.  The appellants highlight the covert way that the teenagers brought the alcoholic beverages into the party to suggest that the teenagers themselves were aware that such type of drinks were not allowed.  Further, the appellants

Nos. 09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 8

argue that the determination of what they "knowingly allowed" is a genuine issue of material fact that should be determined by a jury. They contend that when the facts and inferences are viewed in the light most favorable to them, there should not have been a determination that probable cause existed as a matter of law.

Considering the totality of the evidence, we find a sufficient basis for probable cause that Mrs. Cheolas was in violation of this statute. A probable cause determination is an inquiry into probability, not certainty. The investigating officer, or the person engaged in the prosecution, has to have more than a mere suspicion but less than a prima facie case. In this case, the officers confronted ample evidence that increased the probability that the Cheolases had violated this statute. First, the Cheolases were hosting this party. They were in control of the premises. Mrs. Cheolas was present in the house the entire party. Mrs. Cheolas had been downstairs in the basement, where the teenagers consumed the alcohol. Over the course of the party nineteen out of thirty-two attendees consumed alcoholic beverages—including one whom the police described as pale, semi-conscious, and groggy. Some of the attendees had blood-alcohol levels as high as .14%. A higher blood-alcohol level increases the probability that the teenagers were drinking for an extended period of time, which in turn increases the chances that Mrs. Cheolas, in supervising the party, knew the teenagers were drinking in violation of the statute. Moreover, the statute considers the act of "allowing" to include "any form of conduct" that would cause a reasonable person to believe that permission or approval had been given. This is an objective standard focused on conduct and how a reasonably prudent people can interpret that conduct. The standard is not focused on subjective

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 9

intent.  The question boils down to whether a reasonable person could interpret Mrs. Cheolas's conduct as effectively giving permission to consume alcohol.

Mrs. Cheolas contends that she only went down to the basement once after the party began, to set out the pizza.  A reasonable person can infer given the aforementioned facts that if she was present in the basement she should have been able to detect alcoholic beverages being consumed.  This potential to detect underage drinking in the basement increases the probability that Mrs. Cheolas noticed and failed to take "corrective action" at that time, which in turn increases the probability of her culpability.

The probable cause requirement was not intended to be a tool to divine what actually happened.  That role is fulfilled by the high burden of proof required at criminal trials.  The probable cause standard instead serves to filter out implausible scenarios from the prosecutorial process.  The totality of the circumstances afforded the appellees enough objective facts to surmount the low obstacle of probable cause.  Given the relative ease of attaining probable cause, it would be unreasonable for a jury in this case to determine that probable cause did not exist.  Accordingly, the district court correctly determined that probable cause existed as a matter of law.

### Contributing to the Delinquency of Children

Mrs. Cheolas was also charged with violating Harper Woods ordinance § 14-76 ("§ 14-76"), which provides:

> Any person who shall by any act, or by any word, encourage, contribute toward, cause or tend to cause any minor child under the age of seventeen years to become neglected or delinquent so as to come or tend to come under the jurisdiction of the juvenile division of the probate court . . . whether or not such child shall in fact be

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 10

adjudicated a ward of the probate court, shall be guilty of a misdemeanor. (R. 98-11
Harper Woods Ordinance § 14-76, p. 8).

The Cheolases attempt to distinguish this ordinance, which they argue requires some sort of
affirmative conduct (either in acts or words), from §750.141a, which they argue criminalizes acts
of commission *and* omission.  They argue that based on this alleged distinction, it was inappropriate
for the district court to conclude that evidence related to a violation of §750.141a would readily
suffice to establish probable cause to charge plaintiffs under Harper Woods Ordinance §14-76.

We agree that there was probable cause to charge Mrs. Cheolas with a violation of Harper
Woods Code § 14-76.  First, it is difficult to imagine a situation where probable cause is found to
charge a person with § 750.141a and not found to charge them with §14-76.  The fact that there were
nineteen children in Mrs. Cheolas's house that tested positive for alcohol—all of whom were
referred to a Youth Assistance Program as a result—serves as undeniable probable cause that Mrs.
Cheolas "contributed towards" the underage drinking as to cause the juveniles to come under the
jurisdiction of the juvenile court.

The Cheolases argue that it is significant that §750.141a criminalizes the negative act of
failing to take corrective action, while §14-76 makes no such  mention of a negative act.  They
therefore claim that §14-76 prohibits only affirmative acts, yet there is no specific evidence of an
affirmative act or words that contributed to the delinquency of the minors.  This argument
misunderstands the role of probable cause.  The Cheolases seem to equate the probable cause
requirement with a prima facie showing.  Instead,  probable cause exists when there is more than a
mere suspicion—even if there is less than a prima facie case.  The widespread consumption of

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 11

alcohol in the basement of the Cheolases' residence while Mrs. Cheolas was present supervising serves just as readily as probable cause for a violation of §14-76 as it did for a violation of §750.141a.

### *Obstruction of Justice*

The Cheolases claim that there was no probable cause  for being prosecuted for obstruction of justice.  The relevant Harper Woods ordinance makes it unlawful to "knowingly and wilfully obstruct, resist, or oppose any officer . . . in the execution of any ordinance . . . or . . . obstruct, resist, oppose, assault, beat or wound any of the above named officers . . . in their lawful acts..."[1]  The Cheolases argue that Mrs. Cheolas did not physically obstruct the officer from coming into the house.  To support this point, the Cheolases point to discrepancies between Det. Snider's and Mrs. Cheolas's respective depositions.  Mrs. Cheolas testified that she did not physically resist the officers' attempts to enter.  Det. Firlik testified that Mrs. Cheolas stood in front to the door to her residence and pulled the door shut as he and other officers attempted to enter the house to check on Phelicia VanOverbeke.  On a motion for summary judgment, the court credits Mrs. Cheolas's version over the version of the Dets. Firlick and Snider.  If Mrs. Cheolas version is credited, the court assumes there was not physical resistance.  However, physical resistance is not necessary to establish probable cause for obstruction of justice under Michigan law.  *People v. Philabaun*, 461 Mich. 255, 263 (1999) (holding that actual physical interference is not a necessary element under § 750.479 and that an expressed threat of physical interference is sufficient).  Further, even passive conduct can

---

[1]City of Harper Woods Code of Ordinances §14-166.1.  The Harper Woods ordinance is similar to Mich. Comp. Laws §750.479.

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 12

constitute obstruction of justice if it rises to the level of threatened physical interference.  *People v.*

*Vasquez*, 465 Mich. 83, 97 (2001) (citing *People v. Philabaun*, 461 Mich. 255 (1999)).

In this case, Mrs. Cheolas was standing in front of the door while the officer twice stated,

"Step aside."  Mrs. Cheolas replied "No."  The police had to physically enter the house without the

consent and agreement of Mrs. Cheolas. Even if the Michigan courts would ultimately decide that

this was too passive to support an actual conviction, it nonetheless was close enough to the line to

satisfy the probable cause inquiry.

III.

The City of Harper Woods (the City) filed a cross-appeal of the district court's denial of their

motion for attorney's fees under 42 U.S.C. § 1988.  This Court reviews a district court's decision

denying a request for attorneys fees under 42 U.S.C. § 1988 based on an abuse of discretion standard.

*Revis v. Meldrum*, 489 F.3d 273, 280 (6th Cir. 2007) (citing *Berger v. City of Mayfield Heights*, 265

F.3d 399, 402 (6th Cir. 2001)).  An "[a]buse of discretion is defined as a definite and firm conviction

that the trial court committed a clear error of judgment."*Id.* (citation omitted).  Such an error occurs

where the district court "relies upon clearly erroneous factual findings, applies the law improperly,

or uses an erroneous legal standard." *Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360

F.3d 604, 611 (6th Cir. 2004).

Section 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a

reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  This Court has recognized that

"awarding attorney fees against a nonprevailing plaintiff . . . is 'an extreme sanction, and must be

limited to truly egregious cases of misconduct.'" *Garner v. Cuyahoga County Juvenile Court*, 554

Nos. 09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 13

F.3d 624, 635 (6th Cir. 2009) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)).

"[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978). The district court should "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id*. at 421-22.

The City sought attorney fees from the Cheolases to offset the financial consequence of what they describe as the Cheolases' "shotgun approach to §1983 litigation and pursuit of . . . frivolous claims."

The district court found "no basis for concluding that Plaintiffs' federal claims were 'frivolous, unreasonable, or groundless, or that [Plaintiffs] continued to litigate after [they] clearly became so.'" The City did not invite the district court to find the Cheolases' claims frivolous or "unsupportable" by filing a motion to dismiss. Even the absolute prosecutorial immunity defense raised some questions that the district court described as "close and debatable." The court found that the plaintiff's federal claims implicated difficult questions of federal law. The court also noted that "[o]nly after extensive and careful review of the voluminous record could the Court say that there were no genuine issues of material fact, and that Defendants were entitled to judgment in their favor as a matter of law."

The goal of the § 1988(b) provision is to incentivize litigation of meritorious civil rights violations, while deterring the filing of frivolous claims. The court should only award the defendants

Nos.  09-2418 & 09-2588
*Candice Rossi Cheolas, et al. v. City of Harper Woods, et al.*
Page 14

attorney fees if it finds the plaintiff's claims baseless and frivolous.  In the instant case, the district

court clearly did not regard this case to be frivolous or baseless.  Because we can find  no strong

evidence to suggest that the district court abused its discretion when it found that the plaintiff's

claims were not frivolous, unreasonable, or groundless, we affirm the judgment of the district court.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.