*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JASON ALLEN EVANS,

Defendant-Appellant.

UNPUBLISHED
March 3, 2022

No. 353922
Otsego Circuit Court
LC No. 17-005251-FH

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of two counts of resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve concurrent sentences of 210 days in jail. Defendant appeals as of right. We vacate defendant's convictions and remand for a new trial.

## I. BACKGROUND

This matter arises out of defendant's arrest shortly after midnight on January 28, 2017, when Otsego County Sheriff's Deputies responded to a 911 call reporting a man dressed in dark clothing and stumbling around in the middle of a lane of travel on an unlighted roadway. Responding deputies discovered defendant walking in the roadway. Deputies entreated defendant to move out of the lane of travel, offered him a ride, and expressed concern for defendant's safety and well-being. Defendant responded with belligerence and abusive language, at one point lying down in the travel lane. The deputies eventually informed defendant that he was under arrest for drunk and disorderly conduct. Defendant vigorously resisted arrest, but he was eventually contained and transported to jail.

This is the second time this matter has come before this Court. In early 2018, defendant was convicted by a jury of two counts of resisting or obstructing a police officer, MCL 750.81d(1), and he was acquitted of being an intoxicated disorderly person, MCL 750.167(1)(e). This Court vacated defendant's convictions because the instructions given to the jury, although faithful readings of M Crim JI 13.1 and 13.5 as they were written at the time, did not adequately convey "that the lawfulness of the deputies' conduct was an essential element of resisting and obstructing."

*People v Evans*, unpublished per curiam opinion of the Court of Appeals, issued October 22, 2019 (Docket No. 343291), unpub op at p 3. The core of defendant's theory of the case, then and now, has been that his arrest was unlawful, so he had a right to resist that arrest. On remand, defendant elected to proceed *in propria persona* until shortly before trial. The prosecutor represented to the trial court that it had signed a stipulation to adjourn so that defendant could obtain counsel, even going so far as to opine that "[i]t's in my interest, I think, for the defendant to be represented by counsel at trial also." The trial court nevertheless refused to adjourn, expressing frustration that defendant had unequivocally insisted upon his right to self-representation until less than a week before trial. The trial proceeded with defendant acting *in propria persona*, and he was, as discussed, again convicted of two counts of resisting and obstructing a police officer.

## II. WAIVER OF COUNSEL

Defendant first argues that the trial court did not adequately establish that defendant unequivocally, knowingly, intelligently, and voluntarily waived his right to counsel. We agree.

A criminal defendant has a fundamental right to the assistance of counsel at trial, but the defendant may waive that right under some circumstances. *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). When a defendant initially asks to proceed as his own attorney, a court must determine whether "(1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Id.* at 190. In addition, the trial court must comply with the requirements of MCR 6.005. *People v Williams*, 470 Mich 634, 642-643; 683 NW2d 597 (2004). Compliance with the court rule need only be "substantial." *Russell*, 471 Mich at 191; *Williams*, 470 Mich at 646-647. Nevertheless, "courts *must* indulge every reasonable presumption against the waiver of the right to counsel." *Russell*, 471 Mich at 193 (emphasis in original). An appellate court reviews for clear error the trial court's "factual findings surrounding a defendant's waiver of his right to counsel." *Id.* at 187. However, review is de novo "to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts." *Id.*

It is clear from the record that, until the eve of trial, defendant unequivocally maintained that he wished to represent himself. Defendant also agreed with the trial court that they had repeatedly and extensively discussed "the dangers and disadvantages of self-representation." See *People v Anderson*, 398 Mich 361, 368; 247 NW2d 857 (1976). The record strongly suggests that defendant did in fact fully understand those dangers and had, up to the point of trial, made that decision "knowingly, intelligently and voluntarily." See *id.* Unfortunately, nowhere was any such discussion ever placed on the record in any transcript that we can find.

In *People v Blunt*, 189 Mich App 643, 649-650; 473 NW2d 792 (1991), this Court set forth the following possible risks of self-representation of which a defendant should be warned:

> (a) That self-representation is almost always unwise and that he may conduct a defense "ultimately to his own detriment."

(b) That he is entitled to and will receive no special indulgence by the court, and that he must follow all the technical rules of substantive law, criminal procedure and evidence in the making of motions and objections, the presentation of evidence, voir dire and argument. It should be made crystal clear that the same rules that govern an attorney will govern, control and restrict him—and that he will get no help from the judge. He will have to abide by the same rules that it took years for a lawyer to learn.

(c) That the prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight . . .

(d) That he is going to receive no more library privileges than those available to any other pro per, that he will receive no extra time for preparation and that he will have no staff of investigators at his beck and call. [Citations omitted.]

On numerous occasions, the trial court conscientiously asked defendant whether he still wished to defend himself and whether defendant understood the risks of doing so, and defendant answered both questions affirmatively. However, vague references to those risks are not the same as a discussion of those risks. We think it extremely unlikely, especially given that defendant had already been convicted and sentenced once for the same charges, that defendant did not actually understand the risks of proceeding *in propria persona*. Nevertheless, nowhere in the record can we find any indication that the trial court advised defendant during any discussions of self-representation "of the charge, the maximum possible prison sentence for the offense, [or] any mandatory minimum sentence required by law," as required by MCR 6.005(D)(1).

As an appellate court limited to reviewing the record, MCR 7.210(A), we have very little ability to draw inferential conclusions about what probably happened below in the absence of documentary evidence in the record. See *People v Young*, 418 Mich 1, 21-22; 340 NW2d 805 (1983); *People v Martzke*, 251 Mich App 282, 287-288; 651 NW2d 490 (2002). The record clearly establishes that defendant's insistence upon representing himself was unequivocal. The record also clearly establishes that the trial court provided defendant with some kind of advice regarding the dangers of self-representation. Nevertheless, although it is extremely unlikely defendant was unaware of those dangers, we could only guess at the details and nature of that advice. We presume, although we do not decide, that defendant's waiver of counsel might nonetheless have been adequate for the pretrial stages of the proceedings. However, "an effective waiver of *trial* counsel requires a more exacting waiver than that required to waive counsel at pretrial stages of the proceedings." *Russell*, 471 Mich at 193 n 27 (emphasis in original). Furthermore, we are obligated to "indulge every reasonable presumption against the waiver of the right to counsel." *Id.* at 193. The gravamen of defendant's argument appears to be that he was harmed largely by being deprived of counsel *at trial*.

We are constrained to conclude that, at least as to defendant's right to counsel *at trial*, defendant's waiver of that right was not unequivocal, knowing, intelligent, and voluntary.[1]

## III. REQUEST TO ADJOURN

Defendant argues that the trial court erred by denying defendant's request for an adjournment six days before trial so that he could obtain counsel of his choosing. We agree.

This Court reviews a trial court's decision on a request for an adjournment for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502, 516 (2000). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Six days before trial, defendant submitted a request to the trial court, along with a stipulation signed by the prosecutor, to adjourn the trial so that he could retain an attorney. The trial court returned that stipulation unsigned. On the day of trial, defendant stated that he "would prefer to hire an attorney" and asked for time to do so. The trial court refused, proceeded with jury selection, and then permitted defendant to make a record outside the presence of the jury. Defendant explained that he "had asked for, and the prosecutor had stipulated to, an adjournment so I could get representation" at trial. As noted, the prosecutor agreed that he had signed the stipulation and further added that "it's in my interest, I think, for the defendant to be represented by counsel at trial also." The trial court recognized that defendant had submitted a stipulation several days earlier, but it denied the request pursuant to MCR 6.005(E), which provides in relevant part that:

> If a defendant has waived the assistance of a lawyer . . . [t]he court may refuse to adjourn a proceeding to appoint counsel or allow a defendant to retain counsel if an adjournment would significantly prejudice the prosecution, and the defendant has not been reasonably diligent in seeking counsel.

The trial court extensively discussed why it believed defendant had not been reasonably diligent and was likely engaging in a delay tactic or seeking to create an appealable issue, "so that's why the court denied the request for adjournment, even though it was stipulated to by the prosecutor."

As discussed previously, we are not persuaded that defendant properly waived his right to counsel. However, presuming defendant's waiver was proper, the trial court failed to recognize that MCR 6.005(E) is phrased as conjunctive rather than disjunctive: the trial court was permitted to refuse to adjourn the proceeding if defendant had not been diligent *and* the adjournment would significantly prejudice the prosecution. We wholeheartedly agree with the trial court's observation

---

[1] We note, however, that representation by, or waiver of, counsel should not be permitted to create an appellate parachute. *Russell*, 471 Mich at 192. We also note that the right to self-representation is not without limits if such self-representation would "disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Id*. at 190. In the unlikely event that defendant again seeks to represent himself on remand, the trial court should be mindful of these principles and ensure that a proper and complete record has been made.

-4-

that defendant had not been diligent. We are obligated to defer to the trial court's assessment of defendant's credibility. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986). Even if we were not so obligated, we would be inclined to agree that defendant was indeed almost certainly pursuing a delaying tactic or attempting, unfortunately successfully in this case, to create an improper appellate parachute. See *Russell*, 471 Mich at 192. However, the prosecutor affirmed that he was not only willing to stipulate to an adjournment so that defendant could obtain counsel, but in fact believed doing so would be in his own interest. Notwithstanding defendant's probable motives and clear lack of diligence, it is not possible for *both* requirements for a refusal to adjourn under MCR 6.005(E) to be satisfied.

A trial court necessarily abuses its discretion when it makes an error of law. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013). We are therefore constrained to conclude that the trial court abused its discretion by refusing to adjourn the trial so that defendant could retain counsel.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence was insufficient to sustain his convictions. Although we conclude that defendant is entitled to a new trial on the ground that he was deprived of his right to counsel at trial, we nevertheless address this argument because defendant would be entitled to an acquittal rather than a retrial if the evidence was insufficient. See *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013). We conclude that the evidence was sufficient to sustain defendant's convictions.

The Due Process Clause, US Const, Am XIV, requires that every element of a crime be proved beyond a reasonable doubt in order to sustain a conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from it, are considered to determine whether the evidence was sufficient to sustain a conviction. *Hardiman*, 466 Mich at 429. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). The jury is permitted to pick and choose which pieces of evidence to believe and how to assemble the pieces of evidence it chooses to believe, so long as it does not engage in speculation. *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883); *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996).

Defendant was convicted of resisting or obstructing a police officer under MCL 750.81d(1), which required that the prosecutor prove that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer," that "(2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties" and (3) "that the officers' actions were lawful." *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014) (quotations omitted). The legality of the officers' actions is "an actual element

of the crime of resisting or obstructing a police officer under MCL 750.81d." *Id.* at 492. Defendant disputes the third element: that the police officers were lawfully arresting him when he resisted them.

Deputy Justin Holzschu testified that he was dispatched to an area where a motorist had reported seeing a possibly intoxicated person walking in a roadway. He observed defendant walking in the road near the entrance ramp, and drove near defendant, asking him where he was going, when defendant made a hand gesture, apparently waiving the officer past him. Deputy Holzschu maneuvered his vehicle behind defendant with his emergency lights activated, and slowly followed defendant for 25 to 30 minutes so that he would not be struck by traffic. He asked defendant several times to walk on the shoulder of the road, and reported that defendant continued walking in the roadway, and he even lay down in the road at one time. Deputy Holzschu also testified that several times defendant responded to his requests with obscenities and verbal aggression. Deputy Holzschu testified that he smelled a strong odor of intoxicants from defendant when he interacted with him from four to six feet away, and he thought that defendant had slurred speech.

When Deputy Jordan Kettlewell arrived as backup, he stopped his police vehicle in front of defendant and tried to verbally engage him, including telling defendant that they wanted him out of the road, but defendant ignored him and walked past his vehicle. The officers approached defendant and informed defendant that he was under arrest for drunk and disorderly conduct, and defendant did not allow the officers to place handcuffs on him. The deputies then struggled with defendant to move him against the front of a police vehicle, where defendant continued to physically resist them by pushing back until they were able to handcuff him. Trooper James Leonard observed defendant struggling with, and pulling away from, the officers when he arrived, and helped hold defendant against a vehicle after he was handcuffed. He thought that defendant was "severely intoxicated," because of the smell of intoxicants, and speech patterns that included obscenities. Once defendant was transported to the jail, he refused to leave the police vehicle, so Deputy Kettlewell had to pull him out of the vehicle, upon which defendant went limp and refused to enter the station as ordered. The officers dragged defendant to a chair in the booking area where the booking officer had to utilize a pressure-point intervention and restraints to keep defendant in the chair.

Defendant argues that he was not engaged in illegal drunkenness and disorderly conduct to justify his arrest, as evidenced by his acquittal of being an intoxicated and disorderly person by the jury at his first trial. However, although acquitted conduct may not be considered for sentencing purposes, a finding of not guilty by a jury *is not* an affirmative finding that a defendant did not commit the charged crime, but rather merely a finding that the prosecution did not satisfy its high burden of proving guilt beyond a reasonable doubt. See *People v Brown*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352001), slip op at p 5. Defendant's acquittal of being an intoxicated disorderly person does not establish that he was not, in fact, actually an intoxicated disorderly person, nor does it establish that the arrest for being an intoxicated disorderly person was improper.

For an arrest to be lawful, the police officer making the arrest need have only probable cause, rather than the proof beyond a reasonable doubt necessary for a conviction. In order to make a lawful arrest, "the police officer . . . must have probable cause either that a felony or

misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 69; 859 NW2d 229, 237 (2014) (citations omitted). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. (quotation omitted). Therefore, because an intoxicated disorderly conviction is a 90-day misdemeanor, MCL 750.168, the officer needed to have probable cause that defendant committed the crime in the officer's presence.

According to MCL 750.167(1)(e), a person is "a disorderly person" when the person" is "intoxicated in a public place and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance." Deputy Holzschu testified that probable cause for the arrest was that defendant would not leave the roadway, resulting in the possibility of an accident, and that he smelled of intoxicants. The facts and circumstances within Holzschu's knowledge were that a motorist had reported to the police that a man was walking in the road who appeared intoxicated. Holzschu observed defendant walking in the road for 20 to 30 minutes and had to slowly follow him with emergency lights activated so that another motorist did not accidentally collide with defendant. Holzschu further testified that multiple cars, driving in both directions, passed by. It was nighttime on an unilluminated road. Defendant belligerently refused to leave the roadway; and he was behaving erratically by being present in a roadway, lying in the roadway, and refusing to resolve the situation. Holzschu observed the smell of intoxicants coming from defendant from four to six feet away. From the motorist's information, and Holzschu's observation of defendant's hostile behavior and of the smell of intoxicants, a person of reasonable caution would believe that defendant was intoxicated. Further, a person of reasonable caution would believe that defendant, impaired and walking in a roadway shortly after midnight, endangered himself as well as passing motorists and their vehicles because of the possibility of a collision, or an accident while avoiding a collision. Therefore, the officers' arrest of defendant for being drunk and disorderly was a legal arrest based on observed probable cause.

Furthermore, Deputy Holzschu acted lawfully in directing defendant to walk on the shoulder of the roadway. MCL 257.655 provides that it is a civil infraction to walk in the roadway, rather than on the side of the roadway, and it is not necessarily an unconstitutional seizure for an officer to secure or restrain a person for safety reasons. *People v Green*, 260 Mich App 392, 397-398; 677 NW2d 363 (2004), overruled in part on other grounds in *People v Anstey*, 476 Mich 436, 447 n 9; 719 NW2d 579 (2006). Because defendant repeatedly refused the lawful command of Deputy Holzschu to stop walking in the road, Holzschu had probable cause to believe that defendant committed the crime of obstructing the police in his presence. The resisting and obstructing statute defines "obstruct" as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a) (emphasis added). In considering whether a defendant resisted or opposed a police officer, "abusive speech" is a "relevant fact[]." *People v Philabaun*, 461 Mich 255, 262; 602 NW2d 371, 375 (1999). Therefore, a person of reasonable caution would believe that defendant, by belligerently and repeatedly refusing the officer's lawful command to leave the roadway, provided probable cause that defendant resisted and obstructed the police in Deputy Holzschu's presence, justifying defendant's arrest.

The evidence at trial was amply sufficient to support defendant's convictions.  However, because the record does not reflect a proper waiver of counsel by defendant, and because the trial court abused its discretion by refusing to adjourn trial to permit defendant to retain counsel, we are constrained to vacate defendant's convictions and remand for a new trial.

Vacated and remanded for a new trial.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause